UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-76-F

| | | |
|---|---|---|
| BURMEY PAUL WARD, JR., and | ) | |
| MARCELLA DUNCAN WARD, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HORACE MANN INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court upon motion for summary judgment [DE-20] filed by Defendant Horace Mann Insurance Company ("Horace Mann"). Plaintiffs Burmey Paul Ward Jr. ("Burmey") and Marcella Duncan Ward ("Marcella") have filed what appears to be identical responses [DE-48; DE-49] to the motion for summary judgment. Therein, Plaintiffs move to strike any references to the reports and findings of Sandy Kromenacker, although they did not file a separate motion to strike with supporting memoranda. Horace Mann filed a response to the motion to strike [DE-51] but no reply to the Plaintiffs' responses. These motions are now ripe for disposition.

## I. PROCEDURAL AND FACTUAL HISTORY

In 2003 and 2004, Plaintiffs owned a homeowner's insurance policy, Policy # 32-000773482, covering their property at 2825 Rough and Ready Road in Chadbourn, North Carolina.

### A. 2003 Fire

The property served as Plaintiffs' principal residence until a fire in March 2003, allegedly caused by electrical problems, forced them to move to a temporary location pending repairs.

Following the fire, Plaintiffs hired a public adjuster who represented them in presenting their damages claim for contents, structure, and additional living expenses under the insurance policy. The public adjuster and the Horace Mann adjuster agreed that Plaintiffs should receive payment for structure damage in the amount of $67,749.41, contents damage in the amount of $33,196.74, and damages for additional living expenses in the amount of $6,000.00. Plaintiffs subsequently filed a complaint with the Department of Insurance, because they felt the house should have been declared a total loss.

In July 2003, Plaintiffs filed a Petition for Chapter 7 Bankruptcy. After receiving payment from Horace Mann for the 2003 loss, however, Plaintiffs used the proceeds to pay off the mortgage on the property. Plaintiffs did not pursue the bankruptcy and it subsequently was dismissed. Still, Plaintiffs had no funds remaining for the repair of the structure, and as a result, no repairs were made except for the removal of some sheet rock in the utility room and kitchen area of the structure sometime in the spring of 2004. The structure remained opened to the elements after the 2003 fire and had mold growing in the house. Also, a restoration company known as Country Clean both cleaned and stored Plaintiffs' contents from the 2003 fire, but Plaintiffs did not recover the contents.

### B. 2004 Fire

On May 27, 2004, just four days before the insurance policy covering the Plaintiffs' property at Rough and Ready Road was due to renew, another fire broke out at Plaintiff's property.

Burmey worked as a long-distance driver of a tractor/trailer, owned by him, and delivered produce to Florida and other areas. On the day of the fire, he left the apartment where he lived with his wife, and drove his car to the insured property. Burmey left the car under the carport and picked up his tractor/trailer to make a run to Florida. Burmey contends he left the property at 2:30PM. At

2

approximately 4:30PM, a fire was reported at the Plaintiffs' property. Despite efforts by the local fire department, the residence substantially was destroyed.

### C. Investigation of 2004 Fire and examinations under oath

Following the fire, Horace Mann hired Sandy Kromenacker, someone Horace Mann refers to as a "fire origin and cause expert," to investigate and determine the cause of the fire. Based on Kromenacker's findings regarding the cause of the fire, Horace Mann decided to move forward with the investigation of the Plaintiffs' claim.

Horace Mann first sent Plaintiffs two letters dated June 1, 2004, and July 13, 2004, explaining Plaintiffs' responsibilities in the event of a loss, as outlined in their insurance policy. In those letters, Horace Mann also stated that it had been unable to contact the Plaintiffs since its receipt of the loss notice submitted by Plaintiffs. Thereafter, Horace Mann hired attorney Jim Wood to conduct an examination under oath of the Plaintiffs and obtain documentation from them regarding the loss. Wood sent a letter dated August 13, 2004, to Plaintiffs advising them that he had been retained by Horace Mann to conduct an investigation, and requesting that Plaintiffs submit to an examination under oath scheduled for September 13, 2004 at the Columbus County Courthouse, and that Plaintiffs submit specified requested documents.

Due to an illness in his family, Wood asked his secretary, Joy Carroll, to contact Plaintiffs on September 10, 2004, and cancel the examination scheduled for September 13, 2004. Carroll called Plaintiffs on September 10, 2004 and told Burmey that the examination would have to be postponed. Carroll contends she attempted to reschedule the examination for September 30, 2004, but Burmey said he would have to check his work schedule. According to Carroll, Burmey said he would inform Carroll and Wood if September 30, 2004, would work. Burmey, however, contends

3

that examination definitely was rescheduled for September 30, 2004, and he waited at the Columbus County Courthouse for approximately two and half hours on that date. Burmey did not, however, attempt to contact Wood or his office.

Nevertheless, on October 18, 2004, Wood sent another letter dated October 18, 2004, to Plaintiffs, stating that the examinations were rescheduled for November 1, 2004, to take place at the offices of Soles, Phipps, Ray & Prince in Tabor City, North Carolina. On October 28, 2004, Carroll called Plaintiffs to confirm that they would be appearing on November 1, 2004. Burmey informed Carroll that neither he nor his wife would appear for the examination, and that they would be hiring an attorney. Consequently, on October 29, 2004, Wood sent a letter to Burmey confirming that neither he nor Marcella would appear for the examination scheduled for November 1, 2004, and advising that he would wait to hear from either Burmey or his attorney.

When Wood had not heard from either Plaintiffs or an attorney representing them, he sent another letter dated December 6, 2004. Therein, he confirmed that Plaintiffs had refused to appear on November 1, 2004; that he had not hear anything from them, or an attorney representing them, regarding the rescheduling of the examinations; and he advised them that if he did not hear from within ten days, he would presume they had abandoned their claim.

After again receiving no response from Plaintiffs, Wood sent another letter dated January 20, 2005. He requested that Plaintiffs submit to an examination under oath on February 4, 2005 beginning at 11:00AM at the offices of Soles, Phipps, Ray & Prince in Tabor City. He also informed Plaintiffs they wold be required to produce specified documentation regarding their claim of loss.

On February 3, 2005, Wood spoke with Burmey on the phone. Burmey advised that neither he nor Marcella would appear on February 4, 2005 for examination. Instead, Burmey stated that he

4

was leaving that evening to take a load to Florida. Burmey also said he had missed two loads of hauling, and therefore "he weren't messing with it no more." The record in this case, however, shows that Burmey retired from truck driving, and had not made a trip after August 4, 2004.

Wood then received a letter from R.C. Soles dated February 7, 2005, advising that he had been retained by Plaintiffs. Wood replied to Soles in a letter dated February 16, 2005, that Horace Mann would allow Plaintiffs another opportunity to submit to an examination under oath, contingent upon the following:

(A) The examinations under oath be scheduled at a mutually convenient time in R.C. Soles' office within the next thirty days;

(B) Plaintiffs produce the documents referenced in Woods' August 13, 2004 letter, providing Wood copies, at least seven days prior to the examination; and

(C) Plaintiffs execute and return a Non-Waiver Agreement enclosed with the letter.

On March 4, 2005, an employee of Soles' office called Wood to advise that Plaintiffs had agreed to comply with the conditions set forth in the February 16, 2005, letter. Wood provided several dates for the examination under oath, and the representative from Soles' office stated she would confirm a mutually agreeable date.

On March 9, 2005, Wood again contacted Soles' office regarding dates for the examination. That same day, Soles sent a letter to Plaintiffs reminding his clients that they would have to cooperate with the examinations and production of documents. Soles sent another letter date March 24, 2005, advising his clients that he needed the requested documents by April 5, 2005. He also advised them that if any of the documents were destroyed in the fire, Plaintiffs needed to contact the responsible institution to acquire copies of the documents.

5

The examinations were scheduled for April 15, 2005, at Soles' office. Wood did not receive any of the requested documents, however, until April 12, 2005. Even then, only a portion of the documents were sent, and Plaintiffs did not include an executed Non-Waiver Agreement. Consequently, Wood sent another letter to Soles, dated April 12, 2005, via mail and facsimile, detailing the documents that had not been provided to Wood, and noting that Plaintiffs failed to sign and return the Non-Waiver Agreement, all of which were conditions to rescheduling of the examinations. Because Plaintiffs failed to comply with the conditions, Wood notified Soles that the examinations were cancelled.

### D. Proof of Loss

On December 8, 2004, Plaintiffs submitted a sworn statement in proof of their claim of loss. Plaintiffs claimed losses in the amount of $455,980.00 under the policy. Under North Carolina General Statute Section 58-44-15, proof of loss is required to be submitted within sixty days of the date of loss.

### E. Denial of Claim

On May 26, 2005, Elizabeth Wilhelmy, an adjuster for Horace Mann, sent a letter to Plaintiffs, through their counsel, Soles, denying liability for the claims asserted by Plaintiffs because of their breach of the insurance policy by failing and refusing (1) to submit to cooperate with the investigation, (2) to submit to an examination under oath, (3) produce documents requested by the company, and (4) submit a proper and timely proof of loss.

Soles instituted legal action on behalf of Plaintiffs against Horace Mann on March 28, 2006, in the Superior Court of Columbus County, North Carolina. Plaintiffs alleged damages in the amount of $455,980.00, including damage to the dwelling in the amount of $264,400.00, damages

6

Case 4:07-cv-00076-F   Document 52   Filed 11/18/08   Page 6 of 15

for additional living expenses in the amount of $7,500.00, and damages for contents in the amount of $185,080.00. Horace Mann removed the action to this court on May 3, 2006, and Plaintiffs' attorney and filed a notice of voluntary dismissal without prejudice.

Plaintiffs filed another action, pro se, against Horace Mann on May 8, 2007, in the Superior Court of Columbus County, North Carolina. Plaintiffs again alleged damages in the amount of $455,980.00 including damages for the loss of the dwelling in the amount of $264,400.00, lost of contents in the amount of $185,080.00, and additional living expenses in the amount of $7,500.00. Horace Mann again removed the action to this court on May 29, 2007. Counsel for Plaintiffs entered a Notice of Appearance on June 26, 2007.

During the course of discovery, Plaintiffs submitted that the only contents lost in the fire was a $500 freezer, and that they had suffered no additional living expense. Furthermore, in their bankruptcy petition, Plaintiffs alleged that the insured structure only had a fair market value of $80,000.00, and they alleged they only owned contents in the amount of $10,000.00.

## II. MOTION TO STRIKE

Plaintiffs, in their separate responses to the motion for summary judgment, both move to strike any references to the reports and findings of Kromenacker for the purposes of the motion for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

Rule 56(e)(1)states that supporting affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). Horace Mann argues that the information contained in Elizabeth Wilhelmy's affidavit regarding the report and opinions of Kromenacker establishes, at least partially, why Horace Mann moved forward in the investigation of Plaintiffs' claims of loss,

7

including its request for Plaintiffs to submit to examinations under oath and produce documents regarding their claim and financial condition.

Specifically, Horace Mann notes the paragraph in Wilhelmy's affidavit following her recount of Kromenacker's findings states that Horace Mann, because of the facts and circumstances regarding the fire, hired Wood to conduct the investigation. Horace Mann asserts that Wilhelmy has personal knowledge of Kromenacker's findings because he communicated the information to her, and that it is not offered to prove the truth of the matter asserted. Rather, Horace Mann asserts that it is offered to show the present state of mind of Wilhelmy as representative of Horace Mann in moving forward with the investigation of Plaintiffs' claim.

The court concludes that Horace Mann's arguments are well-taken, and Plaintiffs' motion to strike is DENIED.

### III. MOTION FOR SUMMARY JUDGMENT

Horace Mann contends that no genuine issue of material fact exists as to whether Plaintiffs failed to comply with the conditions precedent to recover of a loss under their insurance policy. Specifically, Horace Mann asserts that Plaintiffs failed to submit to an examination under oath and failed to produce documents in violation of the insurance policy and North Carolina General Statute Section 58-44-15. Horace Mann also contends there is no genuine issue of material fact as to whether Plaintiffs made a material misrepresentation in the presentment of their claim by alleging damage which they knew did not exist. Accordingly, Horace Mann argues that it is entitled to judgment as a matter of law on Plaintiff's claims.

## A. Standard of Review[1]

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

## B. Failure to Submit to Examination Under Oath

A federal court sitting in diversity must apply the law of the highest court of the state in which the suit was brought. *See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). If cases from the North Carolina Supreme Court fail to provide an answer, this court must predict how North Carolina's highest court would rule if presented with this issue. *Id.* In so predicting, the court may consult decisions from the North Carolina Court of

---

[1] Although Plaintiffs' counsel did not see the need to state the "nearly 'boilerplate' " rules and authorities surrounding motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court always finds it necessary to state the standard by which it reviews a motion. Fortunately, due to the advent of electronic filing, the sacrifice of trees, if any, has been minimized.

Appeals, the state's intermediate appellate court, for guidance. *See id.* (noting that decisions of the state's intermediate appellate court "constitute next best indicia of what state law is").

The contract of insurance at the center of this case provides, in part, that an insured must comply with certain duties in the event of a loss, including submitting to examinations under oath:

**WHAT MUST BE DONE IN CASE OF LOSS OR OCCURRENCE**
1.      **PropertyCoverages**

. . .

    c. **Cooperation**–All "insureds" seeking coverage, or the representative or representative of all "insureds" seeking coverage, must cooperate with "us" in the investigation of a claim.

    . . .

    f. **Records And Documents**–As often was "we" reasonably request, "we" must be:
    1) given requested records and documents; and
    2) permitted to make copies of such records and documents.
    g. **Examination Under Oath**–As often [sic] "we" reasonably request, all "insureds" seeking coverage, or the representative or representatives of all "insureds" seeking coverage, must:
    1) submit to examination under oath in matters that relate to the loss or claim; and
    2) sign such statement made under oath. . . .

Notice of Filing [DE-35], Insurance Policy at pp. 35-36. Additionally, North Carolina General Statute Section 58-44-15, which by law is incorporated into every fire insurance policy in North Carolina, requires an insured to submit to examination under oath by any person named by the insurance company.

North Carolina courts have stated that compliance with a provision in a fire insurance policy requiring an insured to submit to an examination under oath is a condition precedent to suing on a fire policy. *Baker v. Independent Fire Ins. Co.*, 103 N.C. App. 521, 522, 405 S.E.2d 778, 778

10

(1991)(citing *Huggins v. Hartford Ins. Co.*, 650 F.Supp. 38 (E.D.N.C. 1986); *Chavis v. State Farm Fire & Cas. Co.*, 317 N.C. 683, 346 S.E.2d 496 (1986)). Similarly, the North Carolina Court of Appeals has concluded that an insured's failure to comply with a reasonable request for documents constitutes the failure to satisfy a condition precedent to recovering on the insurance policy. *See, e.g., Moore v. North Carolina Farm Bureau Mut. Ins. Co.*, 82 N.C. App. 616, 623-24, 347 S.E.2d 489, 493 (1986). Consequently, where an insured has failed to comply with such a provision, North Carolina appellate courts have affirmed the dismissal of the insured's action for failing comply with a condition precedent. *See Baker*, 103 N.C. App. at 522, 405 S.E.2d at 778. *See also Fineberg v. State Farm Fire & Cas. Co.*, 113 N.C. App. 545, 438 S.E.2d 754 (1994)(observing that the failure to comply with condition to submit to an examination under oath bars both recovery and the right to bring suit under the policy).

In this case, Plaintiffs concede that they failed to participate in an examination under oath. Mem. in Opp. to Mot. for Summ. J. [DE-48] at pp. 2-3 ("To ignore or deny these policy requirements and failure is feckless."). Plaintiffs also recognize that North Carolina appellate courts repeatedly have held that the failure to submit to an examination under oath, or the failure to produce reasonably requested documents to an insurance company, bars recovery under an insurance policy. *See id.* at p. 6 (citing North Carolina cases and commenting, "the two propositions seem legally and factually inescapably similar"). Plaintiffs also recognize that the North Carolina Court of Appeals, in *Fineberg v. State Farm Fire & Cas. Co.*, 113 N.C. App. 545, 438 S.E.2d 754 (1994), refused to create a "good cause" exception to mandatory requirements.

In Plaintiffs' view, "[t]his presents a problem." Specifically:

> How many times can an insurer reschedule an examination under oath and still hold the insured to this absolute standard? (Affidavit of Burmey P. Ward, Jr., Attached,

2) What if a fire claim is difficult to defend because it is electrical in origin, the carrier is unsure a jury will be sympathetic to its technical proof or to his circumstantial proof of the financial condition of the claimant, but still feels strongly that a claim is not properly payable?

If this is the case, and there have been ample bad faith claims against sufficient numbers of insurance companies that counsel cannot say that a touch of cynicism doesn't permeate this discussion, wouldn't it be easy to fail to appear at a scheduled examination under oath, to thereafter confuse the schedule of person or persons being examined, especially if they are unrepresented, and to generally make such a nuisance that an unsophisticated insured would ultimately divorce himself from the process and disengage in further efforts to be examined. This would be especially true in[sic] none of the notices to the insured made it perfectly clear that failure to be examined and/or to produce all documents requested would result inexorably in the loss of the right to pursue the claim for fire loss.

The very clarity of the law in this area is surprising. Counsel, who has pursued and defended fire losses for individuals, but never for insurance companies, must suggest his surprise at how unvarying this law seems to be. Since the insurance companies have managed to make the law-- clearly favorable to their interests - this strong, one must ask why they are not obligated to give more exacting statements and notices to the insured of the consequences of failed or delinquent compliance. Isn't this what protection of consumers is all about?

*Id.*

Plaintiffs appear to be advancing an estoppel argument. That is, taking Plaintiffs' version of the facts as true, the fact that Wood, the attorney representing the insurance company, did not appear for the September 30, 2004, examination, prevents Horace Mann from asserting that Plaintiffs have failed to submit to an examination under oath. Such an argument fails.

First, the court observes the absence of evidence establishing an invidious scheme on the part of Horace Mann whereby Wood would purposefully not confirm the September 30, 2004, examination in writing and not appear at the examination, in an attempt to confuse the schedules of Plaintiffs and make such a nuisance that they would be induced to abandon their claim. Rather, the undisputed facts establish that after September 30, 2004, Wood set the date for the examination

12

under oath, and Plaintiffs refused to attend. When he attempted to set another date, Plaintiffs again refused to attend. The record does not show, as Plaintiffs vaguely suggest, that Wood constantly set and reset dates for examination. The record reflects that Plaintiffs, after September 30, 2004, refused to submit to examination. Second, Plaintiffs, in their own submissions of proof to this court, do not give any reason for failing to submit to the examination under oath–much less one that would make the application of estoppel acceptable.

Plaintiffs also argue there is "confusion" surrounding the issues of : "(1) when Mr. Wood actually scheduled the examinations under oath; (2) when Mr. Wood was present; (3) what arrangements Mr. Wood and Mr. Soles actually made about attendance by Mr. Ward and Mrs. Ward and the production of documents, waivers, non-waivers and the like, and why there was so much attendant confusion about when production was made and what was produced." Mem. in Opp. to Mot. for Summ. J. [DE-48] at p. 8. Unfortunately for Plaintiffs, there are *no* genuine issues of material fact surrounding those events. First, the only conflicting evidence as to when the examinations were scheduled concerns the September 30, 2004, examination. Second, as detailed above, whether or not Wood appeared for the September 30, 2004, examination, is not a genuine issue of material fact. It does nothing to change that Plaintiffs refused to appear for at least two later scheduled examinations.

Finally, there is no genuine issue of material fact as to what arrangements were made between Wood and Soles regarding Horace Mann's last attempt to examine Plaintiffs under oath. The evidence in the record establishes that Wood was to conduct examinations under oath of both Plaintiffs on April, 15, 2005, provided that (1) Wood received the documents he requested on or before April 8, 2005, and (2) Plaintiffs executed the Non-Waiver Agreement. Plaintiffs have not

13

come forward with any evidence disputing this agreement. Moreover, there is no dispute that Plaintiffs did not execute the Non-Waiver Agreement until June 2005–more than two months after the examinations under oath were scheduled. *See* Notice of Filing [DE-26], Non-Waiver Agreement, at pp. 58-59. Furthermore, the record indicates that although Plaintiffs provided *some* of the requested documents, Plaintiffs did not provide *all* of the requested documents. Burmey, who by all accounts took charge of the gathering of documents, admitted that he and Marcella did not provide all of the requested documents. *See* Notice of Filing [DE-30], Dep. of Burmey Ward Vol. I, p. 116 (admitting he did not acquire or provide all the requested documents concerning credit card statements); *Id.* at p. 120 (stating that he produced "some" of his bank statements for the twelve months preceding the 2004 fire). In sum, there is *no* dispute that Horace Mann and Plaintiffs agreed to an examination of Plaintiffs under oath on April 15, 2005, provided that Plaintiffs comply wither certain conditions, one of which was an explicit condition in the insurance policy. Plaintiffs admit they did not comply with these conditions, and as such, the examination under oath was cancelled.

At bottom, Plaintiffs, although recognizing that North Carolina state courts have not seen fit to recognize an exception to insurance policy and statutory requirements concerning examinations under oath, ask this court to craft, out of whole cloth, an exception which would excuse their failure to submit to an examination under oath and/or produce requested documents. This court, sitting in diversity, will not concoct a new exception for Plaintiffs under North Carolina law.

Plaintiffs failed to comply with the requirement to submit to an examination under oath, and therefore they are barred from seeking recovery under the policy via this lawsuit. Horace Mann's

14

motion for summary judgment [DE-20] is ALLOWED.[2]

## IV. CONCLUSION

For the foregoing reasons, the Horace Mann's motion for summary judgment [DE-20] is ALLOWED. Plaintiffs' motion to strike, found within their responses to the motion for summary judgment, is DENIED.

SO ORDERED.

This, the 17th day of November, 2008.

*James C. Fox*
James C. Fox
Senior United States District Judge

---

[2] Because Plaintiffs failed to submit to an examination under oath, the court need not consider the parties' arguments concerning the proof of loss.

15